A97A0570. LIVINGSTON v. THE STATE.
(484 SE2d 311)

MCMURRAY, Presiding Judge.

Defendant was tried before a jury on a single-count indictment charging him with "AGGRAVATED ASSAULT UPON A POLICE OFFICER," on March 4, 1994. Viewing the evidence to uphold the jury's verdict of guilty, Corporal Christopher Mark Hegwood of the Monticello Police Department was on uniform foot patrol "near the Majik Market on West Greene Street." At approximately 3:30 a.m., he "observed a vehicle traveling into town on Highway 11. . . . The vehicle appeared to be speeding as it reached the curve right by the ball field. . . . The vehicle ran up onto the curb and it — the wheels were gyrating, making a lot of noise. It went back up onto the oncoming lane." Corporal Hegwood radioed the Jasper County Sheriff's Department dispatcher to be on the lookout for "either a dark blue or gray Chevrolet pickup truck travelling south on Highway 83 and it had rails running down the bed of the truck."

Corporal Hegwood's partner picked him up in a patrol car, and over the radio, Corporal Hegwood heard Jasper County Sheriff's "Deputy Boyd . . . call saying that he had spotted the truck matching that description and he was fixing to stop it." But the next transmission Corporal Hegwood heard was: "Shots fired." When Corporal Hegwood approached Highway 83 South near Clay Street, Deputy

Boyd's patrol car "was parked on the side of the road [with] the door open[, and the] [b]lue lights were on."

When Corporal Hegwood approached Deputy Boyd to determine the extent of his injuries, Deputy Boyd "was complaining of feeling something around his right elbow. . . ." There, Corporal Hegwood found a bullet that he "pulled out of Rick Boyd's sleeve." Officer Alan Burton identified defendant as the male suspect he found at the scene "laying face down on the pavement." He further "noticed a hand gun at that time." Officer Burton kicked "the hand gun off to the side . . . for safety purposes [and] then placed handcuffs on the suspect."

Jasper County Sheriff's Deputy Richard Boyd had been "dispatched . . . to go out Highway 83 South to . . . locate a vehicle . . . seen coming through town by a Monticello police officer." Coming north on Highway 83, "headed back into town, [Deputy Boyd] met a vehicle [headed south] that, in [his] opinion fit the description that had been previously dispatched." Deputy Boyd checked with the Monticello police and was advised to "stop and check him for possible DUI."

As Deputy Boyd approached "with blue lights on[, the suspect vehicle] immediately started slowing down and pulled over on the shoulder." Deputy Boyd radioed his dispatcher to give her "the tag number, the final stop location and . . . [to advise they] would need a wrecker." When Deputy Boyd exited his patrol unit, he was wearing the standard uniform plus a brown Department issue jacket with patches on the shoulder. The driver complied with Deputy Boyd's instruction to shut the engine off. With his flashlight, Deputy Boyd was able to see the face of the driver, whom he identified as defendant.

"At the point when [Deputy Boyd] raised the flashlight, it reflected on the face of the driver and that's the instant that the side glass just more or less exploded. [He] could hear the sound of a gun shot and the driver door glass, side glass, just exploded in [his] face. . . . It knocked [his] glasses off. At that time, [Deputy Boyd] felt a blow to [his] chest. [He] was reasonably sure [he] had been shot." He did see one flash inside the vehicle. As he made his way to safety, Deputy Boyd heard three more gunshots. From the patrol car, he "could see the driver standing there beside the truck . . . still holding the pistol." Just as Deputy Boyd was about to fire his own weapon, defendant "spun around. He turned around real quick, exposed his back to me, and, as he was turning, [Deputy Boyd] saw the pistol fall from his [defendant's] right hand." Consequently, Deputy Boyd "fired no shots through the incident." Instead, he "just screamed at [defendant] to get down. And [defendant] dropped down on his knees [and finally] went face down on the ground." Deputy

Boyd subsequently discovered that the protective "vest [he] was wearing had a steel plate[, and that plate] was dented."

George Alan Banknell, a passenger, identified defendant as the shooter. In 1994, when George Alan Banknell was 14 and defendant was 15, they were next-door neighbors in Winder, Georgia. On March 4, 1994, they were driving around in a stolen truck belonging to George Alan Banknell's brother. George Alan Banknell related that after Detective Boyd had stopped their truck, "he came up to the window and knocked on the window and said, turn the truck off. . . . And [then George Alan Banknell] heard a shot." He saw a gun in defendant's hand.

Special Agent Ricky Harvey of the Georgia Bureau of Investigation related for the jury defendant's custodial statement, in which defendant admitted: "I was driving when the [policeman] pulled us over. He came to the door. He got shot by me. I guess I was scared is why I shot him. I was in the car when I shot him."

Defendant's motion for new trial was denied, and this appeal followed. *Held*:

1. Defendant's second enumeration contends the trial court erred in admitting his custodial statement into evidence, arguing that the same was not freely and voluntarily given.

Only Special Agent Harvey testified at the *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) hearing. His evidence authorized the trial court to conclude that Special Agent Harvey "advised them of the [*Miranda*] rights, him [defendant] and his mother and [her] boyfriend, [when] they were all in the [same] room." Defendant indicated he was 15 and "that he had completed the seventh grade." After defendant "completed the statement, then I [Special Agent Harvey] read that statement back over to him and gave it to him and his mother to read and then asked him, if that was correct, to initial it at the beginning and at the end and then sign it." Both defendant and his mother signed the statement.

The trial court determined that defendant's statement was "freely and voluntarily [given] without any hope of benefit or fear of injury." "We affirm the trial judge's ruling in this case." *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922). See also *Henry v. State*, 264 Ga. 861, 862 (2) (452 SE2d 505).

2. Defendant enumerates the general grounds. In our view, the evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of aggravated assault on a police officer, as alleged in the indictment. OCGA § 16-5-21 (a) (2); *Brown v. State*, 180 Ga. App. 361, 363 (2) (349 SE2d 250).

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED MARCH 17, 1997.

*Lawrence, Ford & Ridgeway, Francis N. Ford*, for appellant.

*Fredric D. Bright, District Attorney, Paul L. Groth, Shelley S. Tice, Assistant District Attorneys*, for appellee.